WO  IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

IDITASPORT ALASKA,

       Plaintiff,

 vs.

KATHARINA MERCHANT, et al.,

       Defendants.

No. 3:18-cv-0068-HRH

O R D E R

Motion to Dismiss

Counterclaim defendants move to dismiss the counterclaims asserted against them.[1]
This motion is opposed.[2] Oral argument was not requested and is not deemed necessary.

Background

Plaintiff is Iditasport Alaska. Defendants are Katharina Merchant, Kyle Durand, Kevin Robbins, Alaska Ultra Sport LLC, and Winter Ultra LLC.

---

[1]Docket No. 44.

[2]Docket No. 48.

Plaintiff is owned and operated by Billy and Erica Koitzsch.³ Plaintiff alleges that it operates the Iditasport ultramarathon.⁴ Plaintiff alleges that the Iditasport ultramarathon was first held in 1987, but that "[o]rganizational difficulties caused the event to lapse in 2001[.]"⁵ Plaintiff alleges that the Koitzschs "revived" the event in 2014 and "branded the event under its original name: Iditasport."⁶

Plaintiff alleges that the Koitzschs "acquired a federal trademark for" the "IDITASPORT design mark" in 2014, U.S. Registration No. 4574317.⁷ This "mark consists of (blue) mountain range with a sun, the (red text) 'IDITA' on the next line (red text) 'SPORT' on the next line, wide blue line underneath and in smaller (blue text), 'Human Powered Ultra-Marathon[.]'"⁸ Plaintiff further alleges that in 2018, it "filed a trademark application for the [word] mark IDITASPORT, U.S. Trademark Application Ser. No 877860698. . . ."⁹ Iditasport Alaska alleges that the IDITASPORT word mark and the IDITASPORT design mark "have gained fame and distinction within the State of Alaska,

---

³Complaint at 4, ¶ 19, Docket No. 1.

⁴Id.

⁵Id. at 4, ¶ 16.

⁶Id. at 4, ¶ 17.

⁷Id. at ¶ 4, ¶ 20.

⁸Exhibit A at 2, Complaint, Docket No. 1.

⁹Complaint at 5, ¶ 21, Docket No. 1.

within the United States, and worldwide by virtue of their longstanding use in identifying a premier winter endurance event."[10]

Plaintiff alleges that defendants operate "the Iditarod Trail Invitational, an ultramarathon intended to replace the Iditasport event."[11] Plaintiff alleges that defendants have since 2015, "attempted to associate their event with Iditasport, without Iditasport's license or permission."[12] Plaintiff alleges that defendant Ultra Sport filed a trademark application in 2016 for the word mark, IDITASPORT, U.S. Trademark Application Ser. No. 86961602, but that this application "was rejected due to a likelihood of confusion with the IDITASPORT design mark."[13] Plaintiff also alleges that defendants have acquired three domain names that include the word "iditasport".[14]

Plaintiff asserts federal and state trademark and unfair competition claims against defendants based on allegations that they are infringing plaintiff's IDITASPORT design mark and its IDITASPORT word mark. Plaintiff also asserts a cyberpiracy claim based on allegations that defendants have inappropriately acquired the domain names which include the term "iditasport."

---

[10] Id. at 5, ¶ 22.

[11] Id. at 5, ¶ 23.

[12] Id. at 5, ¶ 25.

[13] Id. at 5, ¶ 26.

[14] Id. at 5, ¶ 27.

In response, Alaska Ultra Sport LLC and Winter Ultra LLC ( referred to hereafter as the Ultra plaintiffs) assert counterclaims against Iditasport Alaska and Billy and Erica Koitzsch (referred to hereafter as the Iditasport defendants). The Ultra plaintiffs allege that Alaska Ultra Sport has been operating the Iditarod Trail Invitational since 2002.[15] The Ultra plaintiffs allege that Alaska Ultra Sport assumed operation of the original Iditasport event in that year.[16] The Ultra plaintiffs allege that "Alaska Ultra Sport [has] continually used the mark Iditasport in connection with athletic and sports event services from 2007 through 2018[,]" thereby making it "the first of the parties to this case to use the mark Iditasport in connection with athletic and sports event services."[17] The Ultra plaintiffs allege that they "own valid and subsisting common law rights to the Iditasport mark" based on their "widespread, continuous, and exclusive use of the Iditasport mark to identify their event. . . ."[18]

The Ultra plaintiffs allege that in 2014, the Koitzschs "launched a small winter athletic event designed to compete with the Iditarod Trail Invitational and chose the name Iditasport without license or permission from Alaska Ultra Sport."[19] The Ultra plaintiffs allege that the

---

[15] Counterclaim-Plaintiffs' First Amended Counterclaim at 3, ¶ 13, Docket No. 41.

[16] Id. at 4, ¶ 16.

[17] Id. at 4, ¶ 17.

[18] Id. at 4, ¶ 18.

[19] Id. at 5, ¶ 21.

Iditasport defendants falsely claimed to have been using the Iditasport mark since January 1, 1990, when Alaska Iditasport applied for the IDITASPORT design mark in 2014.[20] The Ultra plaintiffs allege that since 2014, the Iditasport defendants "have systematically attempted to divert customers from the Iditarod Trail Invitational" by "promulgat[ing] . . . false and misleading statements and inflammatory remarks regarding the Iditarod Trail Invitational and its organizers and by actively soliciting current and prospective Iditarod Trail Invitational customers to withdraw from the Iditarod Trail Invitational."[21]

The Ultra plaintiffs also allege that Alaska Ultra Sport owns the copyright to a Release and Waiver of Liability document that was created in 2011.[22] They allege that on May 29, 2018, Alaska Ultra Sport submitted an application to register its copyright in this work.[23] The Ultra plaintiffs allege that the Iditasport defendants copied the Release and Waiver of Liability document and have used the work "as part of their solicitations of customers for their athletic events by distributing" the work "electronically on their website."[24]

The Ultra plaintiffs assert five counterclaims. In their first counterclaim, the Ultra plaintiffs assert a common law trademark infringement claim. In their second counterclaim,

---

[20]Id. at 5, ¶¶ 23-24.

[21]Id. at 6, ¶ 30.

[22]Id. at 7, ¶¶ 34-35.

[23]Id. at 7-8, ¶ 36.

[24]Id. at 8, ¶ 37.

the Ultra plaintiffs seek to cancel the registration for the Iditasport design mark (the '317 mark).  In their third counterclaim, the Ultra plaintiffs assert a claim for copyright infringement.  In their fourth counterclaim, the Ultra plaintiffs assert an intentional interference with a prospective economic advantage claim.  In their fifth counterclaim, the Ultra plaintiffs assert a civil conspiracy claim.

Pursuant to Rules 8, 9(b), and 12(b)(6), Federal Rules of Civil Procedure, the Iditasport defendants now move to dismiss all five counterclaims asserted against them.

## Discussion

"Rule 8 requires a complaint to include 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  Eclectic Properties East, LLC v. Marcus & Millichap Co., 751 F.3d 990, 995 (9th Cir. 2014) (quoting Fed. R. Civ. P. 8(a)(2)).  "To meet this requirement, the Supreme Court has held that an 'entitlement to relief' requires 'more than labels and conclusions. . . . Factual allegations must be enough to raise a right to relief above a speculative level.'"  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

"Under Rule 9(b), a plaintiff 'must state with particularity the circumstances constituting fraud.'"  United States v. United Healthcare Ins. Co., 848 F.3d 1161, 1180 (9th Cir. 2016) (quoting Fed. R. Civ. P. 9(b)).  "This means the plaintiff must allege the who, what, when, where, and how of the misconduct charged, including what is false or

misleading about a statement, and why it is false[.]" Id. (internal citations omitted). "Knowledge, however, may be pled generally." Id.

"'To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Zixiang Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). "'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 678). "[T]he complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" In re Rigel Pharmaceuticals, Inc. Securities Litig., 697 F.3d 869, 875 (9th Cir. 2012) (quoting Twombly, 550 U.S. at 555). "In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff." Adams v. U.S. Forest Srvc., 671 F.3d 1138, 1142-43 (9th Cir. 2012).

"When ruling on a Rule 12(b)(6) motion, if 'matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Hicks v. PGA Tour, Inc., 897 F.3d 1109, 1117 (9th Cir. 2018) (quoting Fed. R. Civ. P. 12(d)). The Iditasport defendants have submitted matters outside

the pleadings; but the court has not considered these matters and thus the instant motion does not need to be converted to a motion for summary judgment.

### first counterclaim – common law trademark infringement

To prevail on their common law trademark infringement claim, the Ultra plaintiffs must prove: "(1) ownership interest in a mark, and (2) the likelihood of the infringing mark being confused with the [Iditasport defendants'] mark." Sebastian Brown Productions, LLC v. Muzooka, Inc., 143 F. Supp. 3d 1026, 1039 (N.D. Cal. 2015). The Iditasport defendants argue that the Ultra plaintiffs have failed to state a plausible common law trademark infringement claim because they have not adequately alleged an ownership interest in a mark nor have they adequately alleged priority in their mark.

The Ultra plaintiffs argue that they have adequately alleged ownership interest in the Iditasport word mark, and they cite to paragraph 17 of the counterclaim and Exhibit B to the counterclaim in support. In paragraph 17, the Ultra plaintiffs allege that "Alaska Ultra Sport continually used the mark Iditasport in connection with athletic and sport event services. . . ."[25] This reference to the "Iditasport" mark is not sufficient. The Ultra plaintiffs do not state whether this mark consists of words only or whether this mark includes design elements similar to the '317 mark. The Ultra plaintiffs' reliance on Exhibit B to their counterclaim is also unavailing. Exhibit B is a screenshot of the Iditarod Trail Invitational website with an article on the History of Winter Biking and Winter Races in Alaska that

---

[25]Counterclaim-Plaintiffs' First Amended Counterclaim at 4, ¶ 17, Docket No. 41.

refers to an "Iditasport race" in the past tense.[26] Exhibit B does not indicate what mark the Ultra plaintiffs are claiming an interest in.

As for the Ultra plaintiffs' allegations of priority of use, "[i]t is axiomatic in trademark law that the standard test of ownership is priority of use." Sengoku Works Ltd. v. RMC Int'l, Ltd., 96 F.3d 1217, 1219 (9th Cir. 1996). "To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." Id. The Ultra plaintiffs allege that Alaska Ultra Sport was the first of the parties to the case to use the Iditasport mark and that it has used the mark from 2007 until 2018.[27] The Ultra plaintiffs allege that Alaska Ultra Sport used the Iditasport mark "in connection with athletic events and sports event services."[28] However, the only specific use of the mark that is alleged is use on the Iditarod Trail Invitational website,[29] which, as discussed above, does not indicate what mark the Ultra plaintiffs are claiming an ownership interest in.

The Ultra plaintiffs have failed to state a plausible claim for common law trademark infringement because they have failed to adequately allege what mark they are claiming an

---

[26]Exhibit B, Counterclaim-Plaintiffs' First Amended Counterclaim, Docket No. 41.

[27]Counterclaim-Plaintiffs' First Amended Counterclaim at 4, ¶ 17, Docket No. 41.

[28]Id.

[29]Id. at 4, ¶ 16.

interest in. The Ultra plaintiffs' first counterclaim is dismissed. However, the Ultra plaintiffs are given leave to amend as to this counterclaim.

second counterclaim – cancellation of the '317 mark

"A party who believes he has been harmed by a trademark's registration may seek the cancellation of that trademark's registration on certain specified grounds, including that the trademark was obtained by the commission of fraud on the United States Patent and Trade Office (USPTO)." Hokto Kinoko Co. v. Concord Farms, Inc., 738 F.3d 1085, 1097 (9th Cir. 2013) (citing 15 U.S.C. § 1064)). The Iditasport defendants first argue that the Ultra plaintiffs lack standing to bring a cancellation claim. The Iditasport defendants appear to argue that the Ultra plaintiffs lack both Article III standing and prudential standing. But, because the standing issue can be resolved on prudential standing grounds, the court need not consider whether the Ultra plaintiffs lack Article III standing. Hong Kong Supermarket v. Kizer, 830 F.2d 1078, 1081 (9th Cir. 1987).

"[T]he cancellation petitioner [must] plead and prove facts showing a 'real interest' in the proceeding in order to establish standing." Star-Kist Foods, Inc. v. P.J. Rhodes & Co., 735 F.2d 346, 349 (9th Cir. 1984) (quoting Int'l Order of Job's Daughters v. Lindeburg & Co., 727 F.2d 1087, 1091 (Fed. Cir. 1984)). "The petitioner . . . must show a real and rational basis for his belief that he would be damaged by the registration sought to be cancelled, stemming from an actual commercial or pecuniary interest in his own mark." Id.

The Ultra plaintiffs argue that they have standing to bring a cancellation claim because, as argued above, they contend that they have adequately alleged an ownership interest in the "Iditasport" mark. But, as discussed above, the Ultra plaintiffs have not adequately alleged what mark they are claiming an ownership interest in. Because it is not clear what competing mark the Ultra plaintiffs are claiming an ownership interest in, it is not at all clear that they have an actual commercial or pecuniary interest in their own mark that might be damaged by the '317 mark. Thus, the Ultra plaintiffs have failed to state a plausible cancellation claim.[30] The second counterclaim is dismissed, but the Ultra plaintiffs are given leave to amend this counterclaim.

third counterclaim – copyright infringement

"To prove copyright infringement, a plaintiff must show: '(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original.'" Folkens v. Wyland Worldwide, LLC, 882 F.3d 768, 774 (9th Cir. 2018) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). The Iditasport defendants argue that the Ultra plaintiffs have not plausibly alleged that they copied the protectable elements of the Waiver and Release form. This argument is based on "the doctrines of merger and scènes

---

[30]The court would note that, contrary to the Iditasport defendants' contention, the Ultra plaintiffs have adequately alleged the who, what, when, and where as to the fraudulent statements made by the Koitzschs. They have alleged that the Koitzschs (the who); fraudulently declared that no other person, firm, corporation, or association had the right to use the mark in commerce (the what); in connection their trademark application of January 28, 2013 (the when/where/how).

à faire." Ets-Hokin v. Skyy Spirits, Inc., 225 F.3d 1068, 1082 (9th Cir. 2000). "Under the merger doctrine, courts will not protect a copyrighted work from infringement if the idea underlying the copyrighted work can be expressed in only one way, lest there be a monopoly on the underlying idea." Id. "Under the related doctrine of scènes à faire, courts will not protect a copyrighted work from infringement if the expression embodied in the work necessarily flows from a commonplace idea; like merger, the rationale is that there should be no monopoly on the underlying unprotectable idea." Id. "[W]hen similar features [of a work] are as a practical matter indispensable, or at least standard, in the treatment of a given idea, they are treated like ideas and are therefore not protected by copyright." Apple Computer Corp. v. Microsoft Corp., 35 F.3d 1435, 1444 (9th Cir. 1994) (citations omitted).

The Iditasport defendants argue that any expression in a release and waiver form flows from commonplace principles of contract and liability law and they request that the court take judicial notice of a list of elements of waiver and release forms that they contend are generic.[31] FRE 201 provides that "[t]he court may judicially notice a fact that is not subject

---

[31]These elements, according to counterclaim defendants, are as follows:

- A statement regarding consideration;
- A statement that the agreement has been read, understood, and is freely entered into;
- A description of the dangers associated with an event;
- A statement acknowledging the dangers associated with the event;
- Assumption of the risk of injury;
- A declaration that the event organizers will be held harmless

(continued...)

to reasonable dispute because it[] (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Courts have taken judicial notice of generic elements of creative works. See, e.g., Zella v. E.W. Scripps Co., 529 F. Supp. 2d 1124, 1129 (C.D. Cal. 2007) (taking judicial notice of "elements of a television show" because they are "generally known and can be verified simply by watching television for any length of time").

The Iditasport defendants then argue that the Waiver and Release form contains no original elements that distinguish it from a generic release form. They argue that any similarity between the Ultra plaintiffs' Waiver and Release form and the forms of other winter event organizers is inevitable and thus there are no original elements to be protected. But even if there were a "thin" level of protection, the Iditasport defendants argue that the Ultra plaintiffs' copyright infringement claim is still not plausible because their release form is not virtually identical to the Ultra plaintiffs' form. See Ets-Hokin, 323 F.3d at 766 ("When

---

[31](...continued)
    by the participant and the participant's heirs, agents, and assigns;
    • An acknowledgment of review of event rules;
    • A statement regarding physical capacity to participate;
    • An acknowledgment that event rules are subject to change;
    • A statement regarding modification of the agreement;
    • A statement regarding construction of the agreement;
    • Permission to use the image or likeness of the participant.

Counter-Defendants' Motion to Dismiss Counterclaim Plaintiffs' First Amended Counter-claim at 16, Docket No. 44.

we apply the limiting doctrines, subtracting the unoriginal elements, Ets–Hokin is left with only a 'thin' copyright, which protects against only virtually identical copying").

The court declines to take judicial notice of what the Iditasport defendants contend are the generic elements of a waiver and release form. This is not something that is generally known or that can be easily verified. As a result, the Iditasport defendants' argument that the copyright infringement counterclaim is not plausible fails. The application of the doctrines of merger and scènes à faire requires factual inquiries that are not appropriately considered when deciding a Rule 12(b)(6) motion.

But even if the Ultra plaintiffs' copyright infringement claim is plausible, which it is, the Iditasport defendants argue that the Ultra plaintiffs' request for attorneys' fees as relief for this counterclaim should be dismissed. 17 U.S.C. § 412 prohibits attorneys' fees for "any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." The Ultra plaintiffs concede that they cannot seek attorneys' fees and costs in connection with acts of infringement that predate the submission of their copyright registration application, which was May 29, 2018.[32] However, they argue that they should still be able to seek attorneys' fees and costs for any infringement that occurred after May 29, 2018.

---

[32]Counterclaim-Plaintiffs' Response to Counterclaim-Defendants' Motion to Dismiss First Amended Counterclaim at 12, Docket No. 48.

The weight of authority does not support the Ultra plaintiffs' argument. "'[I]nfringement commences for the purposes of § 412 when the first act in a series of acts constituting continuing infringement occurs.'" City of Carlsbad v. Shah, 850 F. Supp. 2d 1087, 1102 (S.D. Cal. 2012) (quoting Johnson v. Jones, 149 F.3d 494, 506 (6th Cir. 1998)). The Ultra plaintiffs allege that the Iditasport defendants have infringed the Waiver and Release form for the last three years by putting it on their website.[33] This is an allegation of continuing infringement, which means that for purposes of Section 412, the infringement commenced in 2015, which was before the Ultra plaintiffs registered their copyright. The Ultra plaintiffs' request for attorneys' fees as relief for their copyright infringement counterclaim is dismissed.

fourth counterclaim – intentional interference with prospective economic advantage

In order to prevail on an intentional interference with prospective economic advantage claim, a plaintiff must prove the following elements:

> (1) a prospective business relationship existed; (2) the defendant knew of the prospective relationship and intended to prevent its fruition; (3) the prospective business relationship did not culminate in pecuniary benefit to the plaintiff; (4) the defendant's conduct interfered with the prospective relationship; (5) the interference caused the plaintiff's damages; and (6) the defendant's conduct was not privileged or justified.

---

[33]Counterclaim-Plaintiffs' First Amended Counterclaim at 10, ¶ 54, Docket No. 41.

Sisters of Providence in Wash. v. A.A. Pain Clinic, Inc., 81 P.3d 989, 997 (Alaska 2003). "Under this theory, a person who is involved in an economic relationship with another, or who is pursuing reasonable and legitimate prospects of entering such a relationship, is protected from a third person's wrongful conduct which is intended to disrupt the relationship." Ellis v. City of Valdez, 686 P.2d 700, 707 (Alaska 1984). "The cause of action protects both continuing business or customary relationships not amounting to formal contracts, and prospective business or contractual relations which, absent interference, would culminate in pecuniary benefit to the plaintiff." Id. However, "[a] prior business relationship and an existing offer are not enough to establish a 'prospective business relationship'. . . ." Skagway Jewelry Co., LLC v. Westmark Hotels, Inc., Case No. 1:16-cv-00005 RRB, 2016 WL 3746423, at *2 (D. Alaska July 8, 2016).

The Ultra plaintiffs allege that the Iditasport defendants induced vendors to sever their business relationships with the Ultra plaintiffs and diverted prospective customers to their event.[34] The Iditasport defendants argue that these allegations are insufficient to suggest that the Ultra plaintiffs had a reasonable and legitimate expectancy of entering into business relationships with these unnamed vendors and customers in the future. The Iditasport defendants also argue that the Ultra plaintiffs have failed to allege that the Iditasport defendants acted with any intent other than to further their own economic interests. The Iditasport defendants contend that an interference claim based on an allegation that the

---

[34] Id. at 12, ¶¶ 61-62.

defendant acted in "a commercially reasonable manner in his own best economic interest" is not plausible. Id. at *3.

The Ultra plaintiffs have alleged a plausible intentional interference with prospective economic advantage claim. They have alleged that business relationships existed with Iditarod Trail Invitational customers, that the Iditasport defendants knew of these relationships, that the Iditasport defendants interfered with these relationships, and that Ultra Alaska suffered a decline in the number of participants in its event and suffered breaches of contract by vendors and customers. In short, the Ultra plaintiffs have alleged that they had business relationships that would have continued to result in pecuniary benefit for them had it not been for the Iditasport defendants' interference.

### fifth counterclaim - civil conspiracy

"[T]he necessary elements of civil conspiracy[] include 'unlawful' acts by 'two or more persons[.]'" Davis v. King Craig Trust, Case No. S–15962, 2017 WL 2209879, at *3 (Alaska 2017) (quoting Morasch v. Hood, 222 P.3d 1125, 1131-32 (Or. Ct. App. 2009)). The Ultra plaintiffs allege that the Koitzschs and Iditasport Alaska conspired together to divert their customers and to interfere with their relationships with their customers.[35] The Ultra plaintiffs also allege that Iditasport Alaska conspired with "members of the local community in and around Anchorage, Alaska. . . ."[36]

---

[35] Id. at 12-13, ¶¶ 65-66.

[36] Id. at 13, ¶ 67.

The Iditasport defendants argue that the Koitzschs and Iditasport Alaska cannot conspire with each other because the Koitzschs are alleged to be Iditasport Alaska's agents. Specifically, the Ultra plaintiffs allege that the Koitzschs "serve as directors and officers of Iditasport Alaska and direct the corporation's day-to-day operations."[37] If the Koitzschs are Iditasport Alaska's agents, then the Iditasport defendants argue that the civil conspiracy claim is not plausible because "'an employee acting on behalf of the employer cannot be acting in concert with the employer, as there is in law only a single actor.'" Amer. General Life Ins. Co. v. Khachatourians, Case No. CV 08–06408 DDP (RZx), 2012 WL 5267683, at *5 (C.D. Cal. Oct. 24, 2012) (quoting Fiol v. Doellstedt, 58 Cal. Rptr. 2d 308, 313 (Calif. Ct. App. 1996)).

However, as the Ultra plaintiffs point out, they have alleged that the Koitzschs' tortious activities began in 2014, but that they did not form Iditasport Alaska until 2017.[38] Thus, it is plausible that the Koitzschs were conspiring with each other prior to Iditasport Alaska being formed. See, e.g., State v. Stroud, 557 S. E. 2d 544, 550 (N.C. Ct. App. 2001) (recognizing that a husband and wife can conspire with each other because the common law rule that the wife's identity has merged with her husband's has been abrogated in many jurisdictions). As for the Ultra plaintiffs' allegations that Iditasport Alaska conspired with members of the community, it is plausible that "discovery will reveal evidence'" of other co-

---

[37]Id. at 6, ¶ 28.

[38]Id. at 6, ¶¶ 27, 29.

conspirators.  Name.Space, Inc. v. Internet Corp. for Assigned Names and Numbers, 795 F.3d 1124, 1129 (9th Cir. 2015) (quoting Twombly, 550 U.S. at 556).  The Ultra plaintiffs' civil conspiracy counterclaim is plausible.

### Koitzsch counterclaims

Finally, the Iditasport defendants argue that the Koitzschs have been improperly joined as counterclaim defendants because they were not plaintiffs in the original action.  The Iditasport defendants suggest that the Ultra plaintiffs were required to obtain leave of the court to add the Koitzschs as parties.

This argument fails.  "Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim." Fed. R. Civ. P. 13(h).  "While Rule 13(h) establishes that the permissive addition of a person as a party to either a counterclaim or cross claim is governed by Rule 20, neither Rule 13(h) nor Rule 20 require leave of court." Lehrer v. Connelly, Case No. 2:11–cv–00735–LDG (CWH), 2012 WL 1019164, at *2 (D. Nev. March 23, 2012).

> Rule 20(a) governs permissive joinder, and identifies two prerequisites for the joinder of defendants: (1) a right to relief must be asserted against the defendants jointly, severally or in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences; and (2) some question of law or fact common to all defendants will arise.

Armstead v. City of Los Angeles, 66 F. Supp. 3d 1254, 1262 (C.D. Cal. 2014).  The counterclaims being asserted against the Koitzschs arise out of the same transactions as the

counterclaims being asserted against Iditasport Alaska and there are common questions of law or fact as to all counterclaim defendants.

## Conclusion

The Iditasport defendants' motion to dismiss[39] is granted in part and denied in part. The motion is granted as to the first and second counterclaims. These counterclaims are dismissed without prejudice. The Ultra plaintiffs are given leave to amend as to these counterclaims. The motion to dismiss is also granted as to the Ultra plaintiffs' request for attorneys' fees as relief for their copyright infringement counterclaim. This request is dismissed with prejudice. The motion is otherwise denied. The Ultra plaintiffs' second amended counterclaim, should they decide to file one, shall be filed on or before October 4, 2018.

DATED at Anchorage, Alaska, this 13th day of September, 2018.

/s/ H. Russel Holland
United States District Judge

---

[39]Docket No. 44.